Weldon, J.,
delivered the opinion of the court:
This is a claim for stores and supplies, sent by the Committee on War Claims of the House of Representatives to this court, on the 29t.h day of January, 1887, under the Bowman act. On tbe 30th of January, 1888, the claimant was found loyal, and on the 2d of April, .1889, the case was brought to a hearing on the petition of the claimant, in which an aggregate of $14,37').70 is alleged to be due from the United States. The claimant during the war was a citizen of the county of Maury, State of Tennessee; and it is alleged that during said time, from said place, the said stores and supplies were taken.
The claimant filed his petition before the Commissioners of Claims under the act of March 3, 1871, in which he claimed in ■the aggregate the sum now demanded; but in order to enable him to take proof before a special commissioner, the amount demanded was reduced to $9,995.90.
In their report, the commissioners discuss two questions; first that of loyalty, and second the amount and character of the claim. The commissioners upon the question of loyalty say: “It is impossible to declare him to have been a loyal adherent to the cause and Government of the United States from the beginning to the end of .the war.” Notwithstanding they decided the preliminary question of loyalty against the claimant, they examined the evidence with reference to the correctness and justice of the claim, and disallowed it on its merits.
This case was, on the 2d day of April, most ably and elaborately argued, both for and against the claimant, besides a presentation by briefs. Upon the consideration of the briefs, arguments, and evidence the court, on the 8th day of April, filed a finding of facts, in and by which the claimant is allowed the sum of $1,347.
The claimant being dissatisfied-with the result, his counsel filed a motion to amend the findings in such a material and substantial form as to amount to a motion for a new trial. The motion to amend was argued ón both sides as fully as counsel desired, so that, in effect, the claimant has had two hearings on the merits of his claim in this court.
*84 The court, in the consideration of the motion to amend has fully examined the case, and considered it, as upon a second trial, on its merits; and whatever benefit could arise to claimant, from thorough examination, incident to two trials, he has obtained in the motion to amend. As we find by an examination of the evidence, the more important and significant facts stated in the report of the commissioners, we quote the substance of what they said on the merits of the claim. They say
“ With regard to the claim itself, the amount of it, as reduced from its original size, is $9,995.90. Of this amount $2,082.50’ are for timber, lumber, and fencing taken at Nashville, and must have been included in this account for supplies and. damages presented to the so-called Driver Board of Claims at Nashville, October 30, 18S3. That board allowed $212 for timber, $134 for lumber, and $244 for fencing, and seems to have been liberal as to quantity and price, The total allowance on the three items is $590. No steps have ever been taken by the Government to recognize or pay the allowances of this board, but its records and awards are more likely to be right than present evidence and conclusions.
“ The rest of the claim is chiefly made up of 19 horses and mules, 175 head hogs, 2,595 bushels corn, 20 stacks hay, 85' sheep, and .some fresh and smoked meat. The allegation is-that this property was taken during the operations of Hood and Thomas, in December, 1864. In July, 1866, an opportunity was given claimant to present the claim to the Quartermaster-General and Commissary-General, under the act of July 4,1864, He states in his petition that the papers were made up for such presentation, but is informed and believes they were lost by the attorneys.
“In 1868 an opportunity was given claimant to present his-claim for losses arising out of the war to the State of Tennessee,, and he did so. He made claim for 9 saddle horses taken by the rebels and 2 horses and some forage and bacon, amounting altogether to $640, taken by the Federal Army. He also made claim for property taken or destroyed by the Federal Army near Nashville, which is doubtless the same claim presented to the Driver Board and audited in full for $707. The fact that in 1868 he presented no claim for property taken in Maury County, except that for $640, is pretty strong evidence that no other claim existed as late as 1868, and that the pres- *85 «nt one, made up in 1873, is grossly exaggerated in amount and fictitious as to many of the items.
“Another circumstance bears strongly against the genuineness of the claim. It appears from the papers in the case that the claimant has been since the war an unpaid assistant to an agent of the quartermaster’s department stationed at Nashville to investigate such claims as his own. With the knowledge he must have gained from this service of the manner of presenting and prosecuting just such claims as he is now pressing, and with the opportunity of aid- and service he must have had by reason of his connection with the Government officers -engaged in adjusting claims, it is not likely he would have neglected his own interest so completely as not to present and prosecute any honest claim that he had. Of all the thousands of claimants from Tennessee, but few, if any, had so open and fair a chance as he of getting a cheap, speedy, and certain adjustment of any just claim that he might have. Tet he did nothing, as the records of the Commissary and Quartermaster General at Washington show, and the plain inference is that he had no claim to present, and fabricated one when the creation of the Claims Commission opened a new and inexperienced tribunal for claimants and pretenders.
“ The claim is disallowed.”
The statements made in the finding of the commissioners are the indisputable facts of this case, as shown by the evidence, and tend very strongly to establish a state of proof forcing upon the mind a conviction that the large claim of $14,375.70 is a mistake, to say the least, and that what the party did and failed to do at the time he was fresh in the recollection of his grievances, are the best indications of his losses.
The fact that he claimed over $14,000 in his petition before the commission, and then remitted to less than $10,000, in order to avail himself of a convenience and the economy of saving costs, is evidence tending to show that the claim was-grossly exaggerated and out of proportion with the actual and bona fide loss.
The circumstances under which the losses are alleged to have -occurred, are in themselves, calculated to introduce into the -claim confusion and miscalculation. Both armies were on, and near the premises, of the claimant during the war, both were perhaps reckless of the property rights of the claimant; and *86 to an ordinary observer, and even to the claimant, it might be very doubtful, where the line between Confederate and Federal depredation was to be drawn. Losses having occurred from both armies, at a distant day witnesses dim in the recollection of detail might confound what was done by one, with what was really done by the other.
It is insisted by the counsel for claimant, that the findings of the court, are deficient in not showing, in detail, the result on each particular item of the claim.
The findings of the court, as to amounts, are analogous to-the verdict of a jury, in the trial of causes in a commoo law court; they reach ultimate and final results, in a consolidated and specific amount. This is upon the principle of legal philosophy, that all items are, in law, concluded by the ultimate-finding; and the specific result, as to each item, is wholly immaterial to the administration of the law, in the settlement of controversies between parties. Under the Bowman act, it is the duty of this court, to settle by its finding the ultimate facts, so that Congress may assume such ultimate facts as the basis of their judgment, and discretion. In a case like-the one under consideration, it is wholly immaterial to Congressional action, as to how we found on each particular item. What they want to know is, the ultimate fact of a taking, and the value of the supplies so taken, in case of a finding for the claimant. We do show, in detail, items excluded from the finding in cases “ growing out of destruction or damage to property by the Army or Navy,” because that is made jurisdictional, by the act, giving us authority to try cases for stores and supplies. Under the statute as it now stands, it is not deemed proper or necessary, that we should change the form of our finding.
The significant and cogent facts, which bear on the truthfulness of the claim now presented, are that the claimant failed to present his claim to the quartermaster in I860, under the act of July, 1864; that iu 1868 he presented his claim for losses arising out of the war to the State of Tennessee, in which he made claim for 9 horses taken by the Confederates, and 2 horses, forage, and bacon, amounting to the sum of $640, taken by the United States forces; and that he made claim for property taken or destroyed by the Federal Army, near Nashville, audited in full at $707.
*87 It is true, lie says, that papers were made up for presentation of other claims ; hut he was informed by his attorney that the papers were lost.
It also appears that the claimant had some connection with the quartermaster’s department at Nashville; and because of that connection, he must have had superior facilities, for not only the presentation but the prosecution of claims before said department. If the papers were lost or mislaid by the carelessness of the counsel, it is to be presumed that as to a claim so important-the papers would have been supplied, and the large amount now alleged to be due would not, upon a mere accident, have been lost. While the claimant is, not in law or fact, technically estopped by these facts, they become most important in the decision of the genuineness of the claim. They are the moral indications of the truth of the case, founded on facts which do not now depend upon, it may be, the frail and dim recollections of witnesses.
In this, as in all other cases, the burden of proof rests on the claimant to show, by a preponderance of the evidence, the taking and value of the supplies. In the decision of these questions it is the duty of the court to consider the whole evidence, and, if the testimony of witnesses is contradicted or discredited by the circumstances surrounding the transaction, by the acts of the parties at and near the time of the alleged taking, such circumstances and acts being beyond dispute, must control the judgment of the court in the determination of the issue of fact.
We have considered, and reconsidered the testimony of this case, and do not now find, any reason for changing the findings.
The motion to amend will be overruled.